IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WANDA H.,[1]
    Plaintiff,

        v.                                Civil No. 3:19-cv-001 (DJN)

ANDREW M. SAUL,[2]
Commissioner of Social Security,
    Defendant.

## MEMORANDUM OPINION

On April 16, 2013, Wanda H. ("Plaintiff") applied for Social Security Disability Benefits

("DIB") and, on April 23, 2013, for Supplemental Security Income ("SSI") under the Social

Security Act ("Act"), alleging disability from degenerative changes in the lumbar spine, obesity,

major depressive disorder, schizoaffective disorder, an unspecified anxiety disorder, panic

disorder, post-traumatic stress disorder ("PTSD"), and alcohol abuse, with an alleged onset date

of March 3, 2013. The Social Security Administration ("SSA") denied Plaintiff's claims both

initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied

Plaintiff's claims in a written decision, which the Appeals Council vacated and remanded for

further consideration. The ALJ issued a second decision denying Plaintiff's claims and the

---

[1]    The Committee on Court Administration and Case Management of the Judicial
Conference of the United States has recommended that, due to significant privacy concerns in
social security cases, federal courts should refer to claimants only by their first names and last
initials.

[2]    On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term
as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d),
Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill
as the defendant in this matter.

Appeals Council denied Plaintiff's request for review, rendering the ALJ's second decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's second decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in: (1) assigning non-controlling weight to the opinion of Plaintiff's treating psychiatrist, Noman Shamim, M.D.; (2) failing to explicitly state whether Plaintiff's medical impairments could reasonably be expected to produce her alleged pain; and, (3) failing to account for Plaintiff's limitations in concentration, persistence and pace in assessing Plaintiff's mental residual functional capacity. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 15) at 9-21.) This matter now comes before the Court on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14), DENIES Defendant's Motion for Summary Judgment (ECF No. 16) and VACATES and REMANDS the final decision of the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY

On April 16, 2013, Plaintiff filed an application for DIB and, on April 23, 2013, Plaintiff filed an application for SSI, with an alleged onset date of March 3, 2013. (R. at 129, 142, 391.) The SSA denied these claims initially on September 20, 2013, and again upon reconsideration on June 11, 2014. (R. at 155-56, 193-94.) At Plaintiff's written request, (R. at 251-52), the ALJ

---

[3]    The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

held a hearing on October 22, 2015, (R. at 71-100). On February 4, 2016, the ALJ issued a written opinion denying Plaintiff's claims and finding that Plaintiff did not qualify as disabled under the Act. (R. at 198-212.) On February 24, 2017, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case to the ALJ with instructions to further consider the severity of Plaintiff's mental impairments and their effect on her ability to perform work-related activities. (R. at 222-23.) The ALJ held a second hearing on December 18, 2017. (R. at 43-70.) The ALJ issued a written opinion on June 20, 2018, again denying Plaintiff's claims. (R. at 20-33.) On November 1, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's second decision as the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

3

To determine whether substantial evidence exists, the court must examine the record, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC.

4

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On December 18, 2017, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 43-70.) On June 20, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 19-33.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claims. (R. at 18-32.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 3, 2013, her alleged onset date. (R. at 19.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative changes in the lumbar spine, obesity, major depressive disorder, schizoaffective disorder, anxiety disorder NOS, panic disorder, PTSD and alcohol abuse. (R. at 19.) At step three, the ALJ concluded that Plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. part 404, Subpart P, Appendix 1. (R. at 20-21.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some additional limitations. (R. at 21-22.) Specifically, the ALJ noted that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps. (R. at 22.) Plaintiff could never climb ladders, ropes or scaffolds. (R. at 22.) The ALJ found that Plaintiff could have no more than occasional exposure to workplace hazards, such as dangerous moving machinery, and no exposure to unprotected heights. (R. at

22.) As for Plaintiff's mental capacity, the ALJ opined that Plaintiff could "perform unskilled work at an SVP of 1 or 2 involving simple, routine tasks with ordinary breaks where the pace of productivity is not dictated by an external source over which she had no control, such as conveyer belts." (R. at 22.) And the ALJ limited Plaintiff to no contact with the general public and only occasional contact with supervisors and co-workers, with no tandem work assignments. (R. at 22.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 31.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of merchandise marker, routing clerk and housekeeper. (R. at 31-32.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 32-33.)

## IV.    ANALYSIS

Plaintiff, fifty-two years old at the time of this Memorandum Opinion, previously worked as a sewing operator and furniture assembler. (R. at 31.) She applied for DIB and SSI, alleging disability from degenerative changes in the lumbar spine, obesity, major depressive disorder, schizoaffective disorder, an unspecified anxiety disorder, panic disorder, PTSD and alcohol abuse, with an alleged onset date of March 3, 2013. (R. at 129, 142.) Plaintiff's appeal to this Court alleges that the ALJ erred in: (1) assigning non-controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Shamim; (2) failing to explicitly state whether Plaintiff's medical impairments could reasonably be expected to produce her alleged pain; and, (3) failing to account for Plaintiff's limitations in concentration, persistence and pace in assessing the Plaintiff's mental RFC. (Pl.'s Mem. at 9-21.) For the reasons set forth below, the ALJ erred in her decision.

6

## A. The ALJ Provided Insufficient Reasons for Affording Dr. Shamim's Opinion Little Weight.

Plaintiff argues that the ALJ erred in assigning little weight to the opinion of Dr. Shamim. (Pl.'s Mem. at 9-13.) Specifically, Plaintiff argues that the ALJ was "too conclusory" when she stated that Dr. Shamim's opinion "appear[ed] to overstate [Plaintiff's] limitations in comparison to the record as a whole," and that the ALJ's explanation was legally insufficient. (Pl.'s Mem. at 11 (quoting R. at 29).) Plaintiff contends that Dr. Shamim's opinion, if credited, would fully establish Plaintiff's disability. (Pl.'s Mem. at 9.) Defendant responds that the ALJ appropriately assigned weight to Dr. Shamim's medical opinion and that substantial evidence supports the weight assigned. (Mem. in Supp. of Def.'s Mot. Summ. J. ("Def.'s Mem.") (ECF No. 16) at 10.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains multiple medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[4] Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. SSR 06-03p; §§ 404.1527(f), 416.927(f).[5] Under the applicable regulations and caselaw, a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d); *see*

---

[4]     Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed her claims on April 16, 2013, and April 23, 2013, before this regulation took effect. (R. at 129, 142.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claims.

[5]     The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

*Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *see also Craig*, 76 F.3d at 590 ("[I]f a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistencies.'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.*

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

Plaintiff's psychiatrist, Dr. Shamim, completed a mental RFC statement for Plaintiff on March 21, 2016, in which he indicated that Plaintiff had a schizoaffective disorder and was "mentally unstable at times and need[ed] to be on meds for stability and can not [sic] hold [a] job

on [a] regular basis." (R. at 968-71.) Other than Dr. Shamim's handwritten remarks on the final page of the evaluation, the mental RFC statement was entirely comprised of checkbox sections evaluating Plaintiff's mental abilities as they related to understanding and memory, sustained concentration, adaptation and social interaction. (R. at 969-70.) Dr. Shamim indicated that for 15 percent of the workday or more, Plaintiff would be unable to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, or sustain an ordinary routine without special supervision. (R. at 969.) Dr. Shamim further indicated that Plaintiff would likely be off task for 20 percent of the workday and would be 50 percent or less efficient than an average worker on a sustained basis. (R. at 970.)

The ALJ assigned Dr. Shamim's medical opinion little weight, reasoning that Dr. Shamim's opinion "appear[ed] to overstate [Plaintiff's] limitations in comparison to the evidence of the record as a whole." (R. at 29.) The ALJ also noted that Dr. Shamim's opinion "was a check box form with little explanation or support provided," and that the "ultimate issue of whether the claimant can hold a job is reserved to the Commission[er] of Social Security." (R. at 29.) The Court finds the ALJ's explanations legally insufficient, because the ALJ failed to point to specific evidence, or even a category of evidence, in the record to substantiate the weight afforded to Dr. Shamim's medical opinion.

For one, the ALJ's first rationale that Dr. Shamim's opinion "appear[ed] to overstate [Plaintiff's] limitations in comparison to the evidence of the record as a whole," (R. at 29), fails to adequately explain the ALJ's assignment of weight. The ALJ's reasoning offers little insight into the aspects of Plaintiff's limitations that Dr. Shamim overstated, nor does the ALJ point to any specific examples of inconsistencies between Dr. Shamim's opinion and other evidence in

the record. Although Defendant supplies the Court with examples of inconsistencies between the record and Dr. Shamim's opinion, (*see, e.g.*, Def.'s Mem. at 20-21 (noting that Dr. Shamim repeatedly documented normal findings for Plaintiff's mental status)), the Court will not "hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 Fed. App'x 750, 756 (4th Cir. 2015). Indeed, the responsibility falls on the ALJ to "show [her] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). The ALJ's lack of explanation deprives the Court of its ability to determine whether substantial evidence supports the ALJ's assignment of weight, requiring remand.

The ALJ also reasoned that the "ultimate issue of whether the claimant can hold a job is reserved to the Commission[er] of Social Security," and that Dr. Shamim's opinion was "a check box form with little explanation or support provided." (R. at 29.) Although the ALJ correctly noted that the regulations reserve for the Commissioner decisions on a claimant's disability status, the ALJ must nevertheless consider that disability determination as a medical opinion. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012) (noting that "'a statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled' . . . [is] not the same thing as saying that such a statement is improper and therefore to be ignored"); SSR 96-5p, 1996 WL 374183, at *3 (Jul. 2, 1996) ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion."). Moreover, Dr. Shamim's opinion included relevant insight into Plaintiff's functional mental capacity, which the ALJ cannot discredit simply because Dr. Shamim also ultimately opined on Plaintiff's disability status. The fact that Dr. Shamim opined

on a matter reserved for the Commissioner does not justify dismissal of Dr. Shamim's entire opinion.

As for the ALJ's rationale that Dr. Shamim's opinion was merely "a check box form with little explanation or support provided," (R. at 29), the Court recognizes that ALJs may rely on the "limited probative value" of checkbox forms to discredit a medical opinion. *Packett v. Berryhill*, 2018 WL 6441529, at *13 (E.D. Va. Oct. 16, 2018). However, the absence of a sufficient explanation in a medical opinion does not relieve an ALJ of her duty to consider the functional limitations indicated by the checkboxes and their consistency or inconsistency with the evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Without a more specific analysis of the functional limitations endorsed by Dr. Shamim, the ALJ's rationale that Dr. Shamim's checkbox opinion had "little explanation or support provided" proves analogous to cursory reasoning that the Fourth Circuit has found problematic in the past. *See Lewis*, 858 F.3d at 867-68 ("[T]he ALJ inappropriately substituted a subjective decision for that of the overwhelming medical evidence . . . [and] offered no record evidence supporting that conclusion."); *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016) (holding that the ALJ's failure to identify specific evidence that proved inconsistent with medical opinions of record precluded "meaningful substantial-evidence review").

In sum, the ALJ provided insufficient reasons for affording Dr. Shamim's medical opinion little weight. The ALJ must support her assignment of weight with sufficient evidence from the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the Court remands the ALJ's opinion for further consideration of Dr. Shamim's opinion.

## B. The ALJ Erred at Step-Two of the *Craig* Analysis.

Plaintiff argues that the ALJ failed to appropriately conduct the two-step *Craig* analysis in determining Plaintiff's mental RFC. (Pl.'s Mem. at 13-14, 16-21.) Specifically, Plaintiff argues that the ALJ erred at step one of the *Craig* analysis by finding that Plaintiff's medically determinable impairments could produce only "'some of [her] alleged symptoms.'" (Pl.'s Mem. at 13-14 (quoting R. at 23 (modification added)).) Plaintiff argues that the ALJ also erred at step two by improperly assessing the credibility of Plaintiff's subjective complaints. (Pl.'s Mem. at 16-21.) Defendant responds that the ALJ conducted the proper inquiry. (Def.'s Mem. at 27-31.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's consistent complaints. The ALJ must follow a two-step analysis in reviewing a claimant's subjective complaints. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment that reasonably could produce the individual's pain or other related symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce the individual's symptoms, then the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities." SSR 16-3p, 2016 WL 1119029, at *4.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms," but that Plaintiff's

13

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23.)

### 1. *The ALJ Did Not Err at Step One of the* Craig *Analysis.*

The Court disagrees with Plaintiff that the ALJ's decision to credit only some of Plaintiff's alleged symptoms equates to a rejection of Plaintiff's alleged symptoms of pain. (Pl.'s Mem. at 13-14.) Plaintiff had several alleged symptoms in addition to pain, which the ALJ listed before conducting her *Craig* analysis. (*See* R. at 23 (detailing that, in addition to pain, Plaintiff complained of depression, irritability, postural and exertional limitations, anxiety, audio hallucinations, and sleepiness while driving).) Thus, in finding that Plaintiff's medically determinable impairments could reasonably be expected to produce only some of Plaintiff's "above alleged symptoms," the ALJ did not reject the degree of pain or any other symptom about which Plaintiff complained; rather, the ALJ merely rejected some of the symptoms alleged by Plaintiff while accepting others. (R. at 23.) Such an explanation agrees with the Fourth Circuit's holding in *Craig*, which requires ALJs to accept allegations of pain or other symptoms not simply by kind or degree, but as actually alleged by a claimant. *Craig*, 76 F.3d at 594 ("[T]here *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain[, by way of example,] or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*." (emphasis supplied)).

Indeed, this Court has found that an ALJ satisfies step one of the *Craig* analysis using nearly identical language to the language at issue here. *See Powell v. Colvin*, 2016 WL 6562071, at *6 (E.D. Va. Oct. 14, 2016) (finding that use of the word "some" had no harmful effect on the plaintiff, because the ALJ nonetheless found in favor of the plaintiff at step one), *report and recommendation adopted*, 2016 WL 6542849 (E.D. Va. Nov. 3, 2016); *see also Little v. Comm'r*

*of Soc. Sec.*, 2010 WL 5476742, at *9 (E.D. Va. Oct. 22, 2010) (finding that the ALJ satisfied step one of the *Craig* analysis using nearly identical language to the language at issue here); *Huffman v. Astrue*, 2009 WL 3247143, at *6 (S.D. W. Va. Sept. 30, 2009) (same). Importantly, the ALJ proceeded to consider all of Plaintiff's impairments and associated symptoms. (R. at 23-29.) Accordingly, the Court finds no error at step one of the *Craig* analysis.

### 2. *The ALJ Erred at Step-Two of the* Craig *Analysis by Relying Solely on Objective Evidence to Discredit Plaintiff's Subjective Complaints.*

At step two, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her depression and anxiety symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 23.) Plaintiff argues that substantial evidence does not support this conclusion. (Pl.'s Mem. at 16-21.) Defendant responds that substantial evidence in the record supports the ALJ's *Craig* step-two finding. (Def.'s Mem. at 29-31.)

If a claimant's underlying impairment reasonably could be expected to produce the claimant's pain or other symptoms, then the second part of the credibility analysis requires the ALJ to evaluate the claimant's "symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities." SSR 16-3p, 2016 WL 1119029, at *4. The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. *Id.* at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms." *Id.* at *5-7. Based on the degree of consistency between a

claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at *8.

Here, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her anxiety and depression "lack[] support and consistency with the other evidence of the record," adding that evidence in the record "belie[s] allegations of disabling symptoms or functional limitations." (R. at 28-29.) Although the ALJ stated that Plaintiff's subjective complaints proved inconsistent with the evidence of record, in her explanation of the evidence, the ALJ focused only on Plaintiff's objective medical records, thereby committing error. (R. at 28-29.)

Specifically, summarizing the inconsistencies between the evidence of record and Plaintiff's subjective complaints, the ALJ stated that Plaintiff "generally received the type of *medical treatment* one would expect for a totally disabled individual or one more limited than found herein." (R. at 28 (emphasis added).) The ALJ then described objective medical evidence from Plaintiff's physical and mental examinations, without reference to any other category of evidence in the record. (R. at 28-29.) The ALJ's reliance on only objective medical evidence to discount Plaintiff's subjective complaints runs afoul of the relevant regulations and caselaw. *See Lewis*, 856 F.3d at 866 (requiring remand, because ALJ relied solely on objective medical evidence in discounting plaintiff's testimony regarding the limiting effects of his pain); SSR 16-3p, 2016 WL 1119029, at *4 (noting that unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine credibility, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms"). Because the ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to

cause some of her alleged symptoms, Plaintiff "was entitled to rely exclusively on subjective evidence" to prove that the continuous nature and severity of her symptoms prevent her from working. *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); SSR 16-3p. By apparently relying solely on objective medical evidence in finding Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms not entirely credible, the ALJ held Plaintiff to an improper standard and increased her burden of proof. *Lewis*, 856 F.3d at 866. Accordingly, the Court remands the ALJ's opinion for further consideration of Plaintiff's subjective complaints.

### C. The ALJ Properly Accounted for Plaintiff's Moderate Limitations in Concentration, Persistence and Pace at Step Three, but the Court Cannot Determine Whether Substantial Evidence Supports the ALJ's RFC Findings.

Plaintiff argues that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence and pace at step three when she limited Plaintiff to jobs "'where the pace of productivity is not dictated by an external source over which she had no control, such as conveyor belts.'" (Pl.'s Mem. at 15 (quoting R. at 22).) Plaintiff contends that although this RFC limitation essentially limits Plaintiff to non-production pace work, which this Court has found properly accounts for moderate limitations in concentration, persistence and pace, the ALJ nonetheless erred by failing to provide a logical bridge between Plaintiff's mental limitations and her RFC conclusions. (Pl.'s Mem. at 15-16.) Defendant responds that the ALJ need only provide a logical bridge between the evidence of record and her RFC conclusions, which the ALJ did. (Def.'s Mem. at 23-26.)

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1545(a), 416.945(a). In analyzing a claimant's abilities, the ALJ must first assess the

nature and extent of a claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. §§ 404.1545(b), 416.945(b). Generally, the claimant bares the burden to provide the evidence that the ALJ utilizes in making her RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. §§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (citing SSR 96-8p).

Social Security Ruling 85-16 provides additional instructions for the evaluation of mental impairments that may affect a claimant's ability to perform substantial gainful activity ("SGA"), but do not meet the severity of a medical listing at step three. SSR 85-16, at *1. For these less severe mental impairments, the ALJ may not presume that the claimant is, or is not, capable of engaging in SGA. *Id.* Instead, the mental impairments' effects on the claimant "must be demonstrated through a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance." *Id.*

"Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In *Mascio*, the ALJ neglected to discuss the claimant's ability to perform certain functions for a full workday — a troubling omission in light of conflicting evidence in the record. *Id.* at 637. The Fourth Circuit remanded, because the ALJ's opinion lacked the analysis required for a meaningful review and left the court "guess[ing] about how the ALJ arrived at her conclusion . . . ." *Id.* at 636-37.

An ALJ satisfies *Mascio* by "providing detailed discussion of a plaintiff's capacity for concentration, persistence, or pace." *See Thomas v. Colvin*, 2016 WL 1070826, at *4 (E.D. Va. Mar. 16, 2016) (finding *Mascio* satisfied because substantial evidence supported the RFC, and finding no inconsistency in the ALJ's assessment of the plaintiff's concentration, persistence or pace limitations); *Mitchell v. Colvin*, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015) (distinguishing *Mascio*, because the ALJ relied on medical evidence to support his conclusion and did not summarily conclude that a limitation of simple, unskilled work accounted for the plaintiff's moderate impairment in concentration, persistence and pace); *St. Clair v. Colvin*, 2015 WL 5310777, at *6 (W.D. Va. Sept. 11, 2015) (an RFC assessment relying on medical opinion evidence that the plaintiff could "perform simple and repetitive tasks and maintain regular attendance in the work place," despite having moderate impairment in concentration, satisfied *Mascio*). These cases establish that *Mascio* did not create a *per se* rule that a plaintiff's moderate impairment in concentration, persistence or pace must always translate into an RFC limitation. Rather, *Mascio* highlighted the ALJ's duty to review the evidence and explain her decision when the claimant has moderate limitations in concentration, persistence or pace. 780 F.3d at 638.

Here, at step three of the sequential analysis, the ALJ found that Plaintiff had "no more than moderate limitations" in her ability to concentrate, persist and maintain pace. (R. at 21.) In her RFC assessment, the ALJ limited Plaintiff to unskilled work "involving simple, routine tasks with ordinary breaks where the pace of productivity is not dictated by an external source over which [Plaintiff has] no control, such as a conveyer belt." (R. at 22.) Although not couched in explicit terms, this RFC limitation clearly limits Plaintiff to non-production pace jobs, which courts within this district, including this Court, have found to satisfy *Mascio. See Bennett v. Berryhill*, 2019 WL 11014186, at \*11 (E.D. Va. Feb. 15, 2019) ("In determining that the Plaintiff is limited to 'simple and repetitive *non-production pace job tasks*,' the ALJ properly accounts for Plaintiff's moderate limitations to concentration, persistence, and pace." (emphasis supplied) (citing *Mascio*, 780 F.3d at 638)), *report and recommendation adopted*, 2019 WL 1102203 (E.D. Va. Mar. 8, 2019); *Olsen v. Berryhill*, 2019 WL 407469, at \*12-13 (E.D. Va. Jan. 16, 2019) (finding that "the ALJ appropriately accounted for [the plaintiff's] ability to stay on task by limiting her to simple, routine and repetitive tasks for two hours at a time, making simple work-related decisions, with rare changes in the nature of work or tasks performed . . ."), *report and recommendation adopted*, 2019 WL 404982 (E.D. Va. Jan. 31, 2019). The ALJ clearly accounted for Plaintiff's ability to stay on task and maintain pace by limiting her to simple, routine tasks with ordinary breaks and without an external source dictating her pace of work.

As for Plaintiff's argument that the ALJ must nonetheless provide a logical bridge between Plaintiff's ability to concentrate, persist and maintain pace and her limitation to non-production-pace work, the Court cannot determine whether substantial evidence supports the ALJ's RFC findings, because, as previously discussed, the ALJ erred in her analysis of Dr.

Shamim's opinion and Plaintiff's subjective complaints. Accordingly, the Court cannot meaningfully review whether substantial evidence supports Plaintiff's RFC.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No. 14), DENIES Defendant's Motion for Summary Judgment (ECF No. 16) and VACATES and REMANDS the final decision of the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: December 9, 2019